## MILLER v. NATIONAL PRINTING & ENGRAVING CO.

No. 23767. May 28, 1935.

Henry S. Johnston (Judson H. Pierce, on brief), for plaintiff in error.

William S. Cline and William H. Cline, for defendant in error.

PER CURIAM. In the court below the defendant in error, National Printing & Engraving Company, as plaintiff, recovered judgment for $32,677.49, with interest, attorney fees and costs, against the plaintiff in error, Zack T. Miller, as defendant. From this judgment, defendant appeals. For convenience, the parties will be designated as they appeared below.

The Western Show Company, Inc., was engaged in the Wild West show business during 1928, 1929, and 1930, and was managed by Zack T. Miller. He was a stockholder in the show company, and in 1930 was its president. The show company purchased large quantities of show paper and bill board display advertising, and much of it was printed and furnished by the plaintiff. On November 20, 1928, all previous contracts were terminated. On the same day a new contract in writing was signed by the parties whereby plaintiff sold to the show company all printing then on hand for $12,612.44.

On November 22, 1928, the parties entered into another contract, in form a written order, whereby the show company ordered certain printed matter, at specified prices, "all to be ordered shipped and to be paid for by or before November 1, 1929." From time to time, beginning on February 19, 1929, up to and including July 11, 1930, orders written in similar form were sent to plaintiff by authorized agents of the show company for printed advertising and bill board display matter. It is conceded that the sum of $83,399.39 was paid by the show company in installments, which paid its bill for the year 1929 in full; that for the year 1930 the show company ordered a large

amount of printed matter, some of which was shipped and the remainder thereof retained in the hands of the plaintiff awaiting shipping directions. A part of the amount due thereon was paid. The evidence shows that at the time of the trial there was owing from the show company to the plaintiff $16,888.30 for printed matter, which had been shipped out to the show company, and $15,789.19 for the portion which was ordered but for which shipping directions had not been received, aggregating $32,677.49.

It further appears that on December 29, 1928, George L. Miller and Zack T. Miller, signing as Z. T. Miller, executed a certain contract, guaranteeing payment of the indebtedness of the show company to plaintiff, National Printing & Engraving Company, as follows:

"In consideration of one dollar to us paid by the National Printing & Engraving Co., an Illinois corporation, having its principal office in Chicago, Ill., hereinafter called the creditor, receipt of which is hereby acknowledged, we, the undersigned Geo. L. Miller and Zack T. Miller jointly and severally agree to all of the following:

"If Western Show Co., Inc. hereinafter called the debtor, shall fail or neglect to pay when due any indebtedness that is now owing or may hereafter be owing by the debtor to the creditor, whether contracted at the debtor's present address or elsewhere, we will promptly pay the same on demand to the creditor, binding our heirs and assigns to the creditor as firmly as we ourselves are bound. And we hereby waive notice of the amount and date of the debtor's indebtedness, notice of nonpayment and notice of acceptance of this arrangement and consent that any or all of the indebtedness mentioned above may be changed in form by note or otherwise, and may be extended or renewed at the creditor's option without notice to us. And we agree that if any of the above indebtedness is not paid when due, we will also pay the creditor interest at six per cent. from maturity until paid, and if the creditor shall bring suit against the debtor or against us or either of us, we will also pay the creditor the reasonable fee of its attorney and the costs of the suit.

"We agree that this is a continuing arrangement to cover indebtedness of any and every form that the debtor may owe the creditor, whether now contracted or to be contracted until such time as we shall notify the creditor in writing at its principal office that this shall not apply to indebtedness contracted after date of such notice, provided that we shall not at any time be liable for more than $———— on the indebtedness of debtor to creditor.

"Given under our hands and seals at Chicago, Illinois, this 29th day of Dec. 1928.

"George L. Miller, (Seal).
"Z. T. Miller, (Seal)."

The contention is made by the defendant that he is not liable for the amount sued on, as his guaranty applies only to the indebtedness of the show company for the year 1929, incurred, or to be incurred, under the contract in esse at the date of the guaranty. That it was not intended thereby to cover indebtedness incurred during the year 1930.

There is nothing in the contract of guaranty to indicate such a limitation. Its manifest terms are clear and explicit.

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." O. S. 1931, sec. 9462.

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article." O. S. 1931, sec. 9463.

Its meaning cannot be explained by extrinsic evidence. Smart v. Bassler, 101 Okla. 39, 223 P. 352.

The contract signed by the defendant is a continuing guaranty under O. S. 1931, sec. 9615. Its provisions place the burden on its makers to give notice in writing to the creditor of its termination. No such notice is shown to have been given here.

The language of this guaranty cannot be interpreted, understood, or perverted to mean other than that its makers, and each of them, agreed "that this is a continuing agreement to cover indebtedness of any and every form that the debtor may owe creditor, whether now contracted or to be contracted." It is so plain that no extrinsic evidence can throw any light on the ordinary, reasonable, accepted and manifest import of its clear and concise language.

Those cases decided by this court which involve the interpretation and construction of ambiguous language in such contracts have no application here.

It is argued that the death of George L. Miller abrogated this contract. We know of no decisions, and none have been proffered here, which hold that the death of one of two signers of a contract of guaranty releases ipso facto the other. George L. Miller died soon after he signed this contract. The liability of the sureties was joint and sev-

eral, and so set out in the body of the contract. The creditor might have chosen to require another signer, or additional security; or the defendant might have revoked his further liability by giving the notice in the manner provided, but no action was taken by either party. The contract was permitted to stand, and no good reason is apparent to prevent its proper enforcement by the plaintiff.

The brief of the defendant in error contains argument respecting the condition which arose when the motion for a new trial was filed after the lapse of the three-day statutory limit. A motion to strike the motion for a new trial was overruled by the district court. No appeal was brought here from that action. In effect, the court found that the plaintiff had been unavoidably prevented from strict compliance with the statute. It was authorized to so find, and its decision is amply supported by the facts and circumstances shown. City of Maud et al. v. Tulsa Rig, Reel & Mfg. Co. et al., 165 Okla. 181, 25 P. (2d) 792; Roberts v. Sims et al., 111 Okla. 1, 237 P. 852.

Finding no error, the judgment below is affirmed.

The Supreme Court acknowledges the aid of Attorneys C. P. Gotwals, Chas. A. Moon, and O. H. Graves in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Gotwals and approved by Mr. Moon and Mr. Graves, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., anl BUSBY, WELCH, PHELPS, and CORN, JJ., concur.